United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRYAN B.,

          Plaintiff,

    v.

FRANK J. BISIGNANO,

          Defendant.

Case No.  25-cv-05717-PCP

**ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION**

Re: Dkt. No. 11

Pursuant to 42 U.S.C. § 405(g), plaintiff Bryan B. seeks judicial review of the Commissioner of Social Security's decision denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act.[1] Plaintiff asks the Court to reverse the Commissioner's decision and remand for an immediate payment of benefits or, in the alternative, for further administrative proceedings. For the following reasons, the Commissioner's decision is reversed and the matter is remanded for further proceedings.

## BACKGROUND

Plaintiff filed an application for supplemental security income on August 6, 2010. The Commissioner denied plaintiff's application initially and on reconsideration. Plaintiff then requested, and was granted, a hearing before an administrative law judge. The ALJ took testimony from a medical expert, a vocational expert, and plaintiff. The ALJ also considered consultative-examination reports by Dr. Frank Chen. The ALJ subsequently rendered a decision denying the application on August 1, 2014. The Appeals Council denied plaintiff's request for review of that decision on November 16, 2015.

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

In 2016, the Commissioner entered into a settlement agreement in *Hart v. Berryhill*, a class action on behalf of individuals for whom Dr. Frank Chen had prepared consultative examinations and whose SSI or social security disability insurance benefits were denied or terminated. *See* Amended Settlement Agreement, *Hart v. Berryhill*, No. 4:15-cv-00623-JST, Dkt. No. 79-1. The agreement entitled SSI claimants to readjudication of their claims if they had undergone a consultative examination performed by Dr. Chen after January 1, 2011, received an unfavorable decision on their SSI claim, and were not in current pay status at the time of settlement. *See id.* § III(A)(1)–(2). For claimants like plaintiff who received adverse decisions from an ALJ, the agreement provided for rehearing with an opportunity for the claimant to submit supplemental evidence related to the claimant's disability during "the previously-adjudicated period." *See id.* § III(A)(2)(b). The agreement also stated that if the claimant "allege[d] that he or she [wa]s disabled at the date of readjudication … the ALJ will have the discretion to take evidence for both the previously-adjudicated period and the current period[.]" *Id.*

Pursuant to the *Hart* settlement, an ALJ reheard plaintiff's SSI claim on April 27, 2022, taking testimony from plaintiff, vocational expert Skylar DePedro, and medical expert Dr. Joseph Malancharuvil. The ALJ also considered supplemental written evidence submitted by plaintiff. The ALJ then issued a decision denying plaintiff's application on May 25, 2022. The Appeals Council granted plaintiff's request for review of that decision and remanded the case for the ALJ to resolve several issues. As relevant here, the Appeals Council explained that the ALJ's "decision [wa]s accompanied by two exhibit lists that contain conflicting exhibit numbers, thereby creating an unclear record." The Appeals Council therefore instructed the ALJ to create "a consolidated exhibit list … that contains a singular exhibit number for each document[.]"

The ALJ held a remand hearing on May 29, 2024. Because plaintiff had recently suffered a stroke and had already testified at the 2022 hearing, he did not testify again. The ALJ again denied plaintiff's application for benefits in an opinion issued on July 3, 2024, which became the final order of the Commissioner after plaintiff's request for review by the Appeals Council was denied. The ALJ's decision is therefore the final decision subject to this Court's review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

United States District Court
Northern District of California

In the opinion, the ALJ first noted that the relevant period under the *Hart* settlement was from August 6, 2010 (when plaintiff filed his SSI claim) until August 1, 2014 (the date of the first decision denying his application).

The ALJ also explained that, "[t]o comply with the [Appeals Council's] order" to create a consolidated exhibit list with a singular exhibit number for each document, the ALJ had marked certain exhibit lists as obsolete and separated records in one section of the operative exhibit list into individual exhibits. But one section of the operative exhibit list—"Exhibit 2E," which "contains various records and reports"—was "not separated into individual exhibits" because the documents therein "have already been marked as Exhibit 2E" and separation "would create further confusion and even more conflicting exhibit numbers."

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date.

At step two, the ALJ found that plaintiff "has the following severe impairments: bipolar disorder; mood disorder; schizoaffective disorder; personality disorder; and opioid dependence." Though plaintiff alleges that he has severe back pain, myofascial syndrome, and bilateral lower

---

[2] The five steps of the inquiry are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

extremity edema, the ALJ determined that he did not have any severe physical impairments during the relevant period.

At step three, the ALJ found that plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 during the relevant period." The ALJ determined that plaintiff's "mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.03 [schizophrenia spectrum and other psychotic disorders], 12.04 [depressive, bipolar and related disorders], and 12.08 [personality and impulse-control disorders]." To reach that conclusion, the ALJ considered whether the "paragraph B" criteria of each listed impairment were met. To satisfy the "paragraph B" criteria, a claimant's mental impairments must result in one extreme limitation or two marked limitations in one of four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. The ALJ determined that plaintiff's mental impairments did not meet the paragraph B criteria because he had only moderate limitations in each category. The ALJ also found that plaintiff did not satisfy the "paragraph C" criteria for any listing

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity or] RFC." *Bray v. Comm'r of Social Security Admin.*, 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that "during the relevant period" plaintiff "had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [plaintiff] needed to avoid concentrated use of hazardous machinery and needed to avoid concentrated exposure to unprotected heights." The ALJ further determined that plaintiff "could perform work limited to simple, routine, and repetitive tasks," "could work in a low stress job" with "only occasional decision making and … changes in the work setting," and "could have only occasional interaction with the general public." To reach this

4

United States District Court
Northern District of California

determination, the ALJ assessed the evidence in the administrative record to consider whether an underlying medically determinable impairment could reasonably be expected to produce plaintiff's symptoms and then evaluated the extent to which the intensity, persistence, and limiting effects of plaintiff's symptoms limited his work-related activities.

At step four, the ALJ determined that plaintiff "has no past relevant work" experience to which he could return.

At step five, the ALJ considered plaintiff's age, education, work experience, and residual functional capacity and found plaintiff capable of performing jobs that exist in significant numbers in the national economy, such as cleaner, counter supply worker, and hospital cleaner. The ALJ thus concluded that plaintiff was not disabled from August 1, 2010 through August 1, 2014.

## LEGAL STANDARD

On review, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court can set aside a denial of benefits only if it is not supported by substantial evidence or based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

## ANALYSIS

I.    **Substantial evidence does not support the ALJ's evaluation of the medical opinions.**

Plaintiff argues that the ALJ erred in her assessment of the medical-opinion evidence. "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [he]r impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions in ... [her] ability to perform physical demands of work activities, ... to perform mental

demands of work activities, ... to perform other demands of work, ... [or] to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2). An ALJ "must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Where there are ambiguities or conflicts in the medical evidence, the ALJ is responsible for resolving them. *Id.*; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ "must articulate how persuasive [she] finds all of the medical opinions from each doctor or other source, and explain how [she] considered the supportability and consistency factors in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citation modified); *see* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor is "the extent to which a medical source supports the medical opinion by explaining the 'relevant objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)) (citation modified). The consistency factor is "the extent to which a medical opinion is 'consistent with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)) (citation modified). An ALJ may, but need not, consider other factors, such as "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists." *Id.*

Plaintiff argues that the ALJ erred by (1) giving little weight to the opinion of Dr. Malancharuvil; (2) giving little weight to the opinions of examining psychologists Drs. Laura Catlin and Katherine Wiebe; (3) failing to assign any weight to the opinion of consultative examiner Dr. Patricia Spivey; and (4) giving too much weight to the opinions of medical expert Dr. David Glassmire and consultative examiner Dr. Ute Kollath.

### A.    The ALJ lacked substantial justification to discount Dr. Malancharuvil's opinion.

Dr. Malancharuvil testified at the April 2022 hearing that he believed the severity of plaintiff's mental impairments in combination met listings 12.04, 12.05 and 12.08 and that plaintiff had marked limitations in at least two areas. The ALJ attributed "little weight" to this opinion for four reasons, none of which were substantially justified.

First, as to the supportability factor, the ALJ reasoned that Dr. Malancharuvil failed to

United States District Court
Northern District of California

limit his analysis to relevant medical evidence because he "relied on information outside the relevant period" of 2010 to 2014. That was error. The *Hart* settlement required the ALJ to consider plaintiff's supplemental evidence concerning his disability during the previously-adjudicated period. And as plaintiff argues, the Ninth Circuit has repeatedly held that evidence concerning a claimant's disability after the relevant period may be probative of disability during the relevant period. *See, e.g.*, *Diedrich v. Berryhill*, 874 F.3d 634, 640–41 (9th Cir. 2017); *Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014); *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036–37 (9th Cir. 2007); *Lester v. Chater,* 81 F.3d 821, 832 (9th Cir.1995) ("[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." (quoting *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir. 1988))), *superseded on other grounds by* 20 C.F.R. §§ 404, 416. So Dr. Malancharuvil's consideration of later medical records, which he explained were probative of plaintiff's disability during the relevant period, was not a valid basis for discounting his opinion.

Next, as to the consistency factor, the ALJ reasoned that Dr. Malancharuvil's testimony concerning the severity of plaintiff's impairments was contrary to "[p]rogress notes from the [relevant period]," which "confirm improvement of mental health symptoms when [plaintiff] is compliant with medication." Indeed, the 2011 physician's progress notes to which the ALJ cited described plaintiff "improving" with medication, appearing "neat" and oriented, feeling "more positive," hearing voices "less frequent[ly] and less intense[ly]," and "sleeping well." But the same notes explained that plaintiff was still suffering myriad severe and negative symptoms: He was "still hearing [voices] all the time"; "[wa]s still homebound most of the time"; could not "leave the house alone for an extended period of time"' could not "be around a crowd of people"; feared "that somebody in the crowd will hurt him" and "that others are talking about him"; "d[id] not feel safe out there"; was "still feeling sad and depressed"; was "still with suicidal thoughts," albeit "with no plan"; and continued to have "low" energy, interest, and motivation. One of the cited progress notes also explained that plaintiff's girlfriend had "called the police on him" the day prior "because he was talking to himself and was angry, paranoid, and hearing voices." To undermine Dr. Malancharuvil's assertion that plaintiff was disabled, the progress notes must have

indicated that medication "*successfully* reliev[ed] symptoms," *see Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017), and could "*effectively*" control plaintiff's impairments, *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ did not explain why the progress notes, given their discussion of plaintiff's significant continued symptoms, evinced such effective relief. Instead, she focused only on the progress notes' discussion of plaintiff's improvements in certain areas. An ALJ may not "selectively rel[y] on some entries in [claimant]'s records … and ignore[] the many others that indicated continued, severe impairment." *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001).

Third, also as to consistency, the ALJ reasoned that "[t]he record shows no psychiatric admissions or hospitalizations for acute mental health symptoms," undermining Dr. Malancharuvil's diagnosis. But a lack of treatment for mental illness "is not a substantial basis on which to conclude that [a medical expert]'s assessment of [a] claimant's condition is inaccurate." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996); *see also Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) (Posner, J.); *Choat v. Berryhill*, No. 6:17-cv-00617, 2018 WL 2048332, at *5 (D. Or. Apr. 30, 2018) (collecting in-circuit cases explaining that find an ALJ may not discredit an assertion of mental impairment based on a claimant's lack of psychiatric hospitalization).

Finally, as to consistency, the ALJ viewed Dr. Malancharuvil's opinion interpreting certain psychometric tests to show plaintiff's disability as contrary to the opinions of Dr. Spivey and Dr. Kollath, which "found [plaintiff]'s psychometric test results invalid due to poor effort" (i.e., malingering). Because Dr. Malancharuvil's testimony post-dated Dr. Spivey's and Dr. Kollath's opinions, Dr. Malancharuvil had access to more recent records showing that plaintiff consistently demonstrated the same behaviors and limitations in psychometric tests spanning many years. Dr. Malancharuvil explained that, were he to consider only the earlier tests reviewed by Dr. Spivey and Dr. Kollath, he too would have concluded that plaintiff had malingered. But he reasoned that the more recent tests undermined that conclusion "because it's very difficult to consistently malinger in the [same] exact fashion" for an extended period. The consistency of plaintiff's test results therefore suggests that the psychometric tests from the relevant period reflected plaintiff's actual mental limitations at the time, not malingering. In other words, Dr. Malancharuvil expressly

affirmed Dr. Spivey and Dr. Kollath's reasoning, and his differing conclusion stems only from the additional evidence he reviewed. To the extent the ALJ was required to credit only one view, it was error to reject the only opinion that was based on a full review of the relevant evidence in the record. *Cf. Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Because the ALJ failed to provide "specific and legitimate reasons" for discrediting Dr. Malancharuvil's opinion, the ALJ's discounting of that opinion was not substantially justified. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

**B.      The ALJ lacked substantial justification to discount the opinions of Dr. Catlin and Dr. Wiebe.**

Plaintiff also challenges the ALJ's assignment of little weight to the March 2020 psychological report of Dr. Catlin and the April 2022 psychological report of Dr. Wiebe. The ALJ rejected those opinions for three reasons.

First, the ALJ reasoned that the opinions were rendered after the relevant period. As explained above, however, evidence that post-dates the relevant period of alleged disability may still be relevant, so the timing of Dr. Catlin and Dr. Wiebe's opinion was not on its own a legitimate basis for discrediting them.

Second, the ALJ asserted that Dr. Catlin and Dr. Wiebe relied in part on "erroneous information" provided by plaintiff to the psychologists concerning his history of substance use. To be sure, an ALJ may properly reject a medical opinion that relies on an inaccurate medical history. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). But nothing in the record suggests that plaintiff provided, or the psychologists relied on, inaccurate information. As the ALJ noted, plaintiff "informed Dr. Catlin that he had not used drugs or alcohol since … 2016" and "informed Dr. Wiebe that he had not used heroin in five or six years" (i.e., since roughly 2016). Neither the ALJ nor the Commissioner have identified any evidence suggesting that these statements were untrue. And the Court is unaware of any evidence showing that plaintiff used heroin, other drugs, or alcohol between 2016 and the time of Dr. Catlin and Dr. Wiebe's reports.

Finally, the ALJ "note[d] that the claimant performed significant better at the consultative psychological evaluation with Dr. Dixit … than at the evaluations with Drs. Catlin … and Wiebe."

Yet the ALJ heavily discounted Dr. Dixit's opinion, too, so it is unclear why Dr. Dixit's report would discredit those of Dr. Catlin and Dr. Wiebe. If anything, Dr. Dixit's report is the least credible, as it relied on plaintiff's undisputedly false assertion that he had no substance use history at all.

The ALJ's discounting of Dr. Catlin and Dr. Wiebe's reports thus lacked substantial justification.

### C.    The ALJ did not err by failing to assign weight to Dr. Spivey's opinion.

Plaintiff argues that the ALJ reversibly erred by failing to assign any weight to the consultative examination report of Dr. Spivey. The ALJ was not required to evaluate Dr. Spivey's report because it did not qualify as a "medical opinion" under the relevant regulation. For purposes of plaintiff's case, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Dr. Spivey provided no such judgment about the nature and severity of plaintiff's impairments because she concluded that she was "[u]nable to determine" his functioning due to suspected malingering. The ALJ consequently was not required to evaluate or assign weight to Dr. Spivey's opinion. *See Samantha T. v. Bisignano*, No. 25-CV-02919-PCP, 2025 WL 3078833, at *6 (N.D. Cal. Nov. 4, 2025).

### II.    The Court need not address plaintiff's remaining arguments concerning his mental impairments.

Plaintiff raises several additional challenges concerning the ALJ's assessment of his mental impairments. First, he challenges the ALJ's assignment of great weight to Dr. Glassmire and some weight to Dr. Kollath, in part because their opinions were rendered during the period of alleged disability and thus do not account for more recent evidence bearing on plaintiff's impairments during the relevant period. Second, plaintiff argues that the ALJ improperly discredited his testimony and the testimony of other lay witnesses concerning his symptoms, which the ALJ found inconsistent with the medical evidence. Third, plaintiff contends that substantial evidence does not support the ALJ's step-three finding when the medical opinions are

weighted properly. Because this Court remands for further proceedings, the ALJ must reassess all the medical evidence and opinions on remand. *See* Program Operations Manual System (POMS) GN 03106.036 Court Remand Orders, https://secure.ssa.gov/poms.nsf/lnx/0203106036 (last visited January 24, 2026) (a court order vacating a prior decision and remanding the case voids the prior decision and thus returns the case to the status of a pending claim). That will, in turn, necessitate reconsideration of the opinions of Dr. Glassmire and Dr. Kollath, of plaintiff's and other lay witnesses' testimony about his symptoms, and of whether plaintiff met a listing. The Court therefore need not address those issues at this time.

**III.    Any error in the ALJ's step-two finding that plaintiff did not have a severe physical impairment was harmless.**

Plaintiff argues that substantial evidence does not support the ALJ's finding at step-two that he did not have any severe physical impairments during the relevant period. Plaintiff contends that, in fact, he had severe impairments resulting from the combination of his back pain, myofascial syndrome, and bilateral lower extremity edema. Although the ALJ did not determine that any of plaintiff's physical impairments were severe, the ALJ determined that other mental impairments were severe and therefore proceeded to evaluate plaintiff's residual functional capacity. And because an ALJ assessing a claimant's RFC "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" an ALJ's erroneous step-two finding has no bearing on its assessment of a claimant's RFC where all impairments are properly taken into account. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Here, the ALJ expressly considered plaintiff's claimed physical impairments when determining his RFC, so any lack of substantial justification at step two was harmless.

**IV.    Any failure to create a clear record was harmless error.**

Plaintiff contends that the ALJ failed to comply with the Appeals Council's order to clarify the record by creating "a consolidated exhibit list … that contains a singular exhibit number for each document[.]" As the Commissioner notes, however, plaintiff has not identified any manner in which this alleged error "alter[ed] the outcome of the case," so any error was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by statute*, 20 C.F.R

United States District Court
Northern District of California

11

§ 404.1502(a). Notably, though plaintiff had an opportunity to respond to the Commissioner's harmless-error argument in his reply brief, plaintiff failed to do so.

**V.    The Court remands this matter for further administrative proceedings.**

Plaintiff asks the Court to remand for an immediate award of benefits. But "[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *See Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017), as amended (Jan. 25, 2018). Such an automatic award is inappropriate if "there are outstanding issues that must be resolved before a [disability] determination can be made, or if further administrative proceedings would be useful[.]" *Id.* at 1047. Here, even crediting the opinions of Dr. Malancharuvil, Dr. Catlin, and Dr. Wiebe as true, outstanding issues remain concerning plaintiff's RFC, his ability to perform jobs that exist in significant numbers in the national economy, and the materiality of his past substance use to any disability during the relevant period, necessitating a remand for further administrative proceedings.

CONCLUSION

For the foregoing reasons, the Court orders that this matter be REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

**IT IS SO ORDERED.**

Dated: March 16, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California

12